Mr. Clark Good morning, Your Honors. It pleases the court, I'm Leo Clark. I'm representing Appellant Wei Hsu. And because of our time constraints, if the court's permission is granted, I will proceed without stating the case and just go directly to some arguments. Sounds good. This is an odd first question, but you said you represent Appellant Hsu. Do you not also represent Appellant Wang? Well, she's not really, I guess the answer is no, because she's not really proceeding with the appeal. So there is no appeal with respect to whatever judgment potentially runs against Wang? Right, there was no relief granted against her, so she decided not to join in the appeal. Okay. Thank you. So the first issue is to make clear that the standard of view here today is de novo. The only issues are legal. We are not challenging any factual findings in the court. Therefore, Yeh's argument that somehow we can't appeal the denial of the pretrial motions is totally incorrect, because when it's only legal issues, the Dupre case, Rothstein case, and the Barron's case cited are brief. Just because you agree to the facts doesn't mean that when the district court decided the pretrial motions, it regarded it as a purely legal issue, right? But whether you can challenge the pretrial decisions depends on the basis on which the district court decided those motions, not what you're saying now, right? That's correct, but what we're challenging is that when the court decided those, it made errors of law. We're not saying that- Right, okay. Okay. So with respect to the motion for judgment on the pleadings, 12C motion, it's pretty clear that the court erred as a matter of law in relying on things outside the pleadings. Yeh does not contest that in his brief. Basically, what he tries to argue is that there were allegations that established the elements of estoppel, and that those just don't exist, because of estoppel. I don't see why any of that matters since we're post-trial. I mean, what matters now is what was done on the trial record. Well, not really, because if the court had made the right decision then, it would have never gone to trial. So, in other words, if the court makes an error of law at the start- But then that error would adhere in the trial. If there's an error of law that matters for purposes of the trial judgment, then you could make arguments with respect to that. Well, you could say that, because the errors do continue. I agree with Your Honor on that. But the point is that the law then, like Svea v. Klein held, or the Second Circuit case from 2015, becomes meaningless because if you can't appeal at that point without permission, then you can never raise that legal error. So to me, it's one of those things where the legal error will not be corrected if you have to go all the way through trial and not raise the issue there. I agree. I'm not sure that that's right. But even putting that aside, the statute of limitations is an affirmative defense, right? Correct. And so then the plaintiff would respond to the affirmative defense by saying there's a basis for estoppel to extend the statute of limitations, right? No, I don't think that's right, Your Honor. The pleadings- So you're saying the pleading has to anticipate the affirmative defense of the statute of limitations and put all of the elements of estoppel in the complaint even before the defendant asserts the affirmative defense of statute of limitations? Well, they could have moved to amend it. They didn't do that. But let's move on. I'll grant you a report on that, because I've got limited time, is basically in the motion for summary judgment, the key error there was that the court said that concealment was sufficient to establish estoppel, ignoring not only New York, slew of New York cases like Zampano v. Quinn, but also this court's decision in Carroll v. Saunders in 2022 was actually after her decision. But it would clearly hold that concealment is only available when there is a fiduciary or confidential issue. And clearly there's no- Don't the cases seem to draw a distinction between simple nondisclosure and something that's described as active concealment, which is making an effort to hide it from the other party? No, no case, no New York case makes that distinction, Your Honor. And the distinction becomes meaningless here, because when you look at the relevant period, which the conversion was held to be in 2007, so the estoppel period is 2007 to 2010, there has to be some event happening then, or the statute is wrong. What about participation in the scheme? So, I mean, the idea of concealment is one thread. What about, what is the problem, what case do you think best stands for the idea that participation in the scheme is not sufficient? Well, there's, I guess I'd phrase it the other way. It's not participation in the scheme, it's, does the scheme make any difference? In other words, if all of Shanghai and Hong Kong enjoyed Mr. Su and ignoring Mr. Ye, that wouldn't create any of the three requirements for estoppel, misrepresentation, reliance, or diligence, that is suing after you've got inquiry notice. So what happened during the relevant period is 2007 to 2010, is all Mr. Ye says is I tried to communicate with two groups other than Su. One was Zhang, the original owner who sold the Su, and the auction house that originally conducted the 2005 auction that led to this whole mess. Even if they were attributed to be to, they were attributed to be Su, in other words, the scheme matters. The only thing that happens is that... So you're saying just, even though Ye is making inquiries and trying to track down the vessel, you're saying simply ignoring those inquiries is not anything more than mere nondisclosure? Correct, because that's, that's what's an imponderable... But the district court says that that was not mere nondisclosure, but that was the beginning of a scheme to extinguish Ye's ownership interest. Well, I'd say that's speculation at best, because those people weren't witnesses as to what happened then. Yeah, but you just said you're not challenging any of the factual findings. No, I'm saying that there has to be some, some basis in the record to support a legal conclusion, and the legal conclusion here is that there had to be something that happened in 2007 to 2010, and the only thing we have is silence, regardless of who it came from, and regardless of whether it goes to something that started later or had some effect later. There's no case that says, oh, you can look beyond the limitations. You say all there is is silence, but then we have a lot of documented instances of Ye making all of these inquiries as to the status of the vessel and where it is, right? At some point, silence is not just silence, right? Like, let's say Ye was at the front door, banging on the door, saying, where's my vessel, and everybody's just hiding inside and pretending nobody's home. That's more than nondisclosure, right? So if Ye is, like, calling every five minutes and they're not responding, maybe that's active concealment as opposed to mere nondisclosure. So why couldn't the district court conclude that Ye was being diligent in making all of these inquiries, and the decision to keep Ye in the dark was active concealment as opposed to mere nondisclosure? Okay, that would lead to the conclusion, though, that you run into two other elements, reliance and diligence. And if I'm not going to know what one answers, where's the reliance on that? No, I know they're not going to answer me, right? So then I'm not relying on anything there. I'm directed to. It's not repose I'm directed to, it's action. And I want inquiry notice that they're not going to respond to me. And so I've got three years to sue from that point, right? So that puts him on inquiry notice, but no one responds for three years to his inquiries. Let's say he's knocking on the door. You're saying Ye should have sued Ye, even if he didn't find out that Sue had the vessel. Correct. Ye should have sued Ye. Right. You're not just allowed to sit back forever and wait till somebody knocks on your door and says, oh, I converted your vessel. I'm sorry. No, I was just going to make sure that before you sat down, you reached the conversion issue. Okay. The conversion issue is that Ye repeatedly conceded in his pleadings in the science of the court that Sue had a right to possession. If you have a right to possession, you can't convert. Okay. All you can do is you're a co-owner and you're entitled to possession or New York law. I thought you effectively conceded conversion in 2007. Who did? I thought below you conceded conversion. No, we did not, Your Honor. There was a colloquy in the pre-trial where there was confusion as to what the court was asking. The court was asking, were we thinking that that was the element of the case? Counsel did not think that Sue was conceding that conversion was no longer an issue. I mean, what would the case be about then? You said that, or trial counsel, I don't know, that Sue was not a bona fide purchaser when he bought the vessel in 2007. Right? Right. That's not the conversion issue, Your Honor. Right. But what is the meaning of saying he's not a bona fide purchaser? The meaning is that because there was co-ownership that Sue apparently didn't know about whether he did or not, it doesn't matter. Under the name of Dodd, non-Hobbit principle, you can't get what you don't have. Ye's rights continue. Sue may have thought he was buying it all, but he only got half. So there was co-ownership all the way through. But if he thought he was buying it all, doesn't that mean he's not? He is a bona fide purchaser? I thought the point of saying he's not a bona fide purchaser is he was aware of Ye's interest in the vessel. No, no, Your Honor. I think that's the confusion. It's a pretty subtle point of law. But it's basically... It's not that subtle. Right? So the idea is when he buys the vessel, does he think he's owning it free and clear or he's only purchasing a 50% interest in it and that Ye is a 50% owner? And one could understand the strategic reason behind such a concession in 2007 because of the statute of limitations. Right? Right. It was a strategic issue from our point of view. But at the point of time where he is buying it, it's not bona fide purchaser of the vessel. It's a bona fide purchaser of Zhang's interest in the vessel. And that's where the confusion lay. Among everybody in the case at hand. They didn't distinguish, as is proper, between the vessel and the interest. Okay. So just to tease this out. So you're saying he's only buying the 50% that Zhang owned. Right? And you're saying that based on the Shanghai judgment and its interpretation of the 2005 agreement, Zhang had a 50% ownership interest but had a right of possession. Right. But had the right of possession. Right. Now, the district court says, well, the right of possession under the 2005 agreement was only in connection with the auction. And once the auction was abandoned, there was no exclusive right of possession, but they both had a right to possession because they're co-owners. Do you think that that was a mistake? I think that was a mistake. I mean, that's a reading of... Was it a translation issue? I'm sorry? Well, it may have been a translation issue or it's just a misreading of the Shanghai judgment. No one decided to argue... But even the Shanghai judgment, it's still an interpretation of the 2005 contract between Zhang and Ye. So why would the right of exclusive possession travel when you sell the 50% interest if there was a separate contract that established the possession? So when Su buys the thing, why is Su also buying the possessory right that's in the contract? That's separate from the vessel, right? It's based on the 2005 agreement. Well, no one raised that argument that I know of, but logically it doesn't follow that the 2005 agreement survived the judgment. And the judgment continues to give possession to Su. But the judgment is – it says under the 2005 agreement, Zhang gets to possess the vessel because they made these arrangements in connection with the offer. So the judgment doesn't extinguish the agreement. The judgment is an interpretation of what the agreement provides. Right, but under New York law, which applies here, once you're a co-owner, which is what the Shanghai judgment establishes, then you have these bundle of rights, and the bundle of rights includes possession. Right, but the other co-owner also has a right of possession. And so if you determine that you're going to exclusively possess it, then you're exercising a domination of the object that's inconsistent with the other owner's interest, right? Well, Zhang may have converted at that point in time if that's what he intended to do. But Su wasn't getting anything other than Zhang had to give. So you're saying that Su was only buying a 50 percent interest, but then Su in fact was exercising exclusive possession and complete control over it. That, again, would be inconsistent with somebody who's only owning 50 percent of the vessel. No, Your Honor. He had the vessel. He kept it. First he put it in a closet. Then he tried to sell it. But no one says that he was entitled to possession. Ye never asked for possession. There was no obligation of a co-owner to offer possession. Because Ye was calling incessantly, as you just said, and they weren't returning his calls. Right, but that's a different issue from what is – So he was acting like he had the right to exclusive possession. And then even if you were right that somehow Su got to purchase the 50 percent and somehow also purchase an exclusive right of possession, then that just means the conversion would happen later when he tries to sell 100 percent and keep all the proceeds, right? Well, no – And that would be worse for you because it would be a more recent conversion. No, there's no such thing as an attempted tort. There's no such thing as attempted tort. Trying to sell something is not a tort. That's not conversion. If I try to sell something – Conversion is when you exercise control of the object that's inconsistent with the other owner's ownership interest, right? No, he's not – well, I don't see how you say that's exercising control by attempting to do something. It's not actually – Well, if I submit it to an auction house and I say – and I don't tell them that somebody else owns 50 percent and I say sell this object and give me 100 percent of the proceeds, aren't I acting as if I'm the exclusive owner of the object? You may be acting that way, but you're not engaged at that point in conversion. What if they – so you're saying it's not conversion until they actually keep the money and don't give 50 percent to the pecuniary. Right, right, right. The pecuniary owner. Right. Okay. Okay. Any other – okay, thank you, Mr. Clark. You've entered time for rebuttal. Let's hear from the appellee, Ms. Mo. Good morning, and may it please the court, my name is Elizabeth Lee Mo, and my firm represents Ye Ya Huang. Equity favors the vigilant and not those who conceal and delay. This court should affirm the district court's trial decision that found that Mr. Ye proved that Mr. Su and Huang converted his 50 percent ownership interest in the vessel. Su and Huang were – So what facts do we look to see on the equitable estoppel of the statute of limitations defense between 2007 and 2010 that would indicate something other than just silence and non-response? Well, yes, Your Honor. First of all, the district court – well, first of all, Mr. Su is not challenging any of the findings of fact. The district court was very detailed in pages of pages of at least – Right, but of all of that detail, don't we need to find something between 2007 and 2010? Yes. From 2007, the – both Su, Huang, as well as Chongyun Auction House, as well as their employees, won – I thought Huang wasn't in the picture until 2014. Yes, but the evidence at trial also established that she was affiliated with Chongyun before that, and she had an equity share. Mr. Su physically took possession of the vessel, and he actually took it out of Shanghai to Hong Kong and, as Mr. Clark said, stored it in his brother's closet. He did not notify Ye. Are you saying that we have to find that he improperly possessed it in order to find that he can't assert a statute of limitations? No. Okay. What I am suggesting is that the district court's decision should be affirmed, and to further elaborate on the acts of concealment, he put it up for auction in 2011, and that's between –  Yes, Mr. Su. So that is already outside the limitations period, right? So if the conversion is happening in 2007, then there needs to be some kind of active concealment before 2010. Yes. Or in 2010 at the latest. Yes, but this was a continuing course. Even if – so even if we take for granted that there was a scheme to extinguish Ye's rights and then to keep all the proceeds, if the way the scheme played out was they said amongst each other, let's just ignore Ye and not tell him anything, and then after the statute of limitations expires, if we still have the vessel, we'll put it up for auction, why isn't that just nondisclosure? It's not just nondisclosure, Your Honor. First of all, we have to look at the totality of the circumstances of each member of the scheme, particularly Su. Before 2010. Before 2010, yes. From 2007 to 2010, at least the record, the testimony by Mr. Su at trial was that he held onto it, he actually commissioned a fake and he never notified Mr. Ye during that time. He didn't notify. So let's just take each piece. What you've just identified is maintaining it and not notifying. Correct. Is any of that active concealment? It is active concealment when Mr. Ye made persistent efforts to reach out to the people he knew between Chongyun Auction House, Zhang, and even the district – even the court in Shanghai. He made many, many different efforts. Maybe I can ask a question another way. What is the case that you think best stands for the proposition that ignoring the requests being made consists of active concealment? Well, first, to take it one step back, Your Honor, I do think that this court has two cases that are very reflective are in the Eastern District and as well as the Southern District of cases involving – one is the Farkas v. Farkas case where it involved a charade of loans. Is there any precedential case for us? I do believe that there is Farkas v. Farkas. Farkas does. Yes. I'm sorry. I misspoke. Farkas v. Farkas is very instructive here because it showed a charade of loans and this nondisclosure. That was active concealment. When we go back to what the district court looked at here and relied upon, this was not just a nondisclosure but it was commissioning – not just commissioning the fake but in between 2007 and 2010, all the members of the scheme had a role to play and all of their actions were to conceal the conversion and to – to make sure nobody is returning Ye's calls or responding to any of the inquiries that are coming into the auction house and so on. Then it's active concealment. It's not simply nondisclosure. Yes, but we also have other evidence that shows that it ended up being affirmative steps and that was recognized by the district court and that may or may not be within – What are the affirmative steps? Well, they submitted a letter purportedly written by Zhang and also signed by Mr. Ye about not being able to reach him. There was other instances of – that was in 2014 and also 2016.  So that's still after the period. I mean in the period from 2007 to 2010, even though the district court thinks it's all part of a scheme ultimately to sell it and keep all the proceeds, really what's happening is Ye is making repeated inquiries and nobody is responding to him. Yes, but also that they are – that Mr. Su and other individuals are actually taking actions with the vessel. They're having fakes made. They're actually trying to put it up for auction. They're moving it. But that's the conversion. That's not the concealment of the facts from – But they're also taking action, Your Honor, to conceal the fact that they converted it and not allowing Mr. Ye to exercise his ownership right. What specific steps, just again, pre-2010 or in 2010 or before were – are you pointing to – because the only facts I see the district court relying on from that time period is the failure to respond to Ye's inquiries. I'm just – I mean a district court opinion in front of me. And as I see it, that's – I just don't see what you're pointing to as anything other than post-2011 and beyond that could allow a determination of active concealment. Well, I think it's important to first take one step back and say that Mr. Su admitted that he was not a bona fide purchaser, and yes, that completed the conversion. Right. And from then on, he never made any attempts to reach out to Mr. Ye. So you're saying he had an affirmative duty? Yes. Under the theory –  Yeah, okay. Absolutely. But you're saying he had affirmative duty. I mean is that because a co-owner who has possession somehow has a fiduciary duty to the other co-owner to let him know what's going on? Not a fiduciary duty, but in light of the court accepting the Shanghai judgment under collateral estoppel, both of the owners had the co-equal rights of possession and that at least Mr. Su, by saying that he was not a bona fide purchaser, and the district court finding that he knew Mr. Ye's interests when he – The district court doesn't decide that there was an affirmative obligation to disclose something. I kind of thought your argument would be different. I kind of thought it would be that Ye is making these inquiries to the auction house, and in the normal course of business, the auction house would respond to those inquiries just like Sotheby's ultimately did. But the district court found that because the Chongyang auction house was in cahoots with Zhang and Ye – or sorry, with Zhang and Su, they departed from normal business practices to keep Ye in the dark, and that's an action. Yes. Is that what the district court said? Yes, and it was very obvious that the Chongyang auction house was in cahoots with Mr. Su, and in fact during the trial, Ms. Wang testified from the Chongyang auction house. And so even though Mr. Ye made all of these inquiries, he had no idea that – And do we know that? Do we know that in the normal course of business, if they had not been in cahoots, the Chongyang auction house would have responded to inquiries from a purported owner of an object they had that was for auction? Well, we would hope that they would because they would do their own due diligence in finding the provenance of the actual item that they're auctioning. At least in 2005, when Mr. Ye originally brought it to Chongyang, the evidence showed at trial that they – at least one of the senior members of Chongyang spent – met much time with Mr. Ye and going over the provenance, going over the ownership, showing Mr. Ye having to show customs documents. And these are all facts that the district court relied on in its opinion. And then there's a complete reversal. It's not just that he was making these inquiries in the 2007 period. It's also that they had a prior history with Ye. Correct. So they would have known that he had an ownership interest. Of course. That is correct. And then that's what Mr. Ye led to believe that if there was an auction at 2011, all the same people who were still there from the 2005 failed auction would have at least had some sort of inkling of reaching out to Mr. Ye. And Chongyang was named as a party in the Shanghai judgment, in the Shanghai case between Zhang and Ye. And so I think it's very important to look not just in this vacuum of what Mr. Su didn't do but what Mr. Su continued to do throughout the estoppel period. And that is what the district court did and what – – in cahoots with the Chongyang auction house, which itself was departing from the way it would normally treat a co-owner in order to keep Ye in the dark about what's happening with the vessel. But, Your Honor, that's not exactly what Mr. Su did. Mr. Su did more. He sued Zhang when he commissioned it to – I'm not suggesting that's not enough. That is something. It is something. I didn't mean it to be a hostile question. That's what we call softball. Yes, Your Honor. He not only tried to quiet title in 2015 and not naming Ye when he knew of Ye because he was given all of Ye's contact information by Sotheby's and yet he refused to give his contact information. Again, in the district court, when he sued Sotheby's in 2017, he again failed to name Ye. And I think all of these acts of silence or just non-action is very telling of what he intended to do, and that was to shut Mr. Ye out. I think that that – What about the point that Mr. Clark made about, well, even if Ye couldn't have discovered and didn't discover what Su was doing, he should have sued Zhang within three years because he was making these inquiries and Zhang wasn't responsible. And so even if he didn't know about the transfer to Su, Zhang had converted the vessel by not respecting his ownership interest. And so he should have sued within the limitations period, at least against Zhang, and the failure to do so shows a lack of diligence. Your Honor, he did not know that Mr. Zhang converted the vessel. So how would he have known to sue Zhang? He made inquiries to Chong Yuan. He made inquiries to Mr. Zhang. He even – the testimony at trial even showed that he went to – back to the Shanghai judgment. He made inquiries, but over the course of three years, nobody is responding to his inquiries. So if I'm a co-owner of an object with somebody and I've made inquiries to that person about the status of the object over the course of three years, the person doesn't even respond to me. It seems to me that indicates the person is exercising a kind of control over the object that is inconsistent with my ownership rights. That seems like a conversion, doesn't it? Yes, but Mr. Ye did all that he could do within the information that he was provided, and that was established at trial, that during that period – But is he on inquiry notice within the – at that point such that three years beyond that, the statute is run? Well, he's not on inquiry notice to sue because he didn't know Sue existed up until 2019. That's right. I'm saying that that's right. So I guess just my question is this, which is why didn't he sue Zhang in the three-year period? The trial evidence showed that he made attempts to go back to the Shanghai court, and there is a small point. Oh, so he did try to sue Zhang? He did not try to sue Zhang, but he tried to have the judgment enforced by the Shanghai court to try to find his vessel because when he wasn't able to find it and he knew that Mr. Zhang had possession of it, only a limited right of possession, only if it was sold, and the Shanghai judgment was very clear. I'm sorry, only if it were sold? Yes, the Shanghai judgment gave possession to Mr. Zhang only if – up until the point that it was sold. Up until the point that it was sold. Yes, if it was sold, yes, and I'm sorry I'm misquoting the exact language of it. The 2005 agreement does say that if the sale is unsuccessful, the vessel is going to be returned to Zhang. I mean your point is that that doesn't give him a right of possession in perpetuity. It just means like that's where the auction house has to sit back if they don't succeed in selling it. Yes, but if it was sold, then it would obviously go to whoever the owner is or that it would – that Ye never lost the right of possession just because Mr. Zhang had possession to it. I'm sorry, so if Zhang had full possessory rights in the vessel, could there be conversion? Yes, of course there could be conversion because Mr. Ye's – because having this limited right of possession does not lessen or weaken Mr. Ye's ownership's rights. Right, but that – but doesn't – whatever they're entitled to is the pecuniary interest and if there was no money yet, where – how is that conversion? The fact is that conversion is the unauthorized taking or control of an item and the fact that Mr. Zhang then sold 100% – Okay, but what would be – so if it's not possession because you agree that they had full possession until it was sold but not in perpetuity, what else were they doing to control? They were taking it away – they were taking it from one place to another and storing it in a closet in Hong Kong without Ye's consent or even notice to Mr. Ye. And at the time of the purported contract between Su and Zhang, Mr. Su first testified it was just a letter of intention, then he testified that it was and that later on, he ended up paying in four or five separate payments of what he believed was the entire vessel. And Mr. Su represented himself as 100% owner of the vessel to – in his testimony he said that with – in 2007 when he took possession of it. I disagree that Zhang had full possessory rights because you say he only had a limited right of possession as long as they were making an effort to sell it at the auction house. But if he did have possessory rights and then ownership was divided 50-50, that would help you because it means that there was no conversion until they tried to sell the object, and so then the conversion would have happened later. Correct. And then there is clear misrepresentation three years after 2011, right? Yes, Your Honor, but he also admitted – So if Mr. Clark is right about the division of the ownership and possessory rights, then it's easier to get within the statute of limitations. Correct, but as the district court – what the district court relied on was that Mr. Su was not a bona fide purchaser and therefore the actual finding that he was – well, concession of Mr. Su at the pretrial conference and all throughout trial that he was not a bona fide purchaser set the tone of how the analysis of the conversion and whether – Mr. Clark's argument that actually it's not a conversion unless you succeed in selling the thing. You can't have an attempted conversion. This was not an attempted conversion. That should be disregarded because, again, Mr. Su admitted that he was not a bona fide purchaser. He took possession of the vessel. He represented himself as 100 percent of the owner, and he continued to do that all the way up until the suit was filed. Right, and acting in connection with the object as the owner is enough for a conversion. You don't have to succeed in alienating the object to somebody else. That is correct. That is correct, and for all these reasons, Your Honor – May I ask, just before you sit down, what is your understanding of the judgment here as against Wong? As against Wong, Wong converted the vessel against Mr. Ye in 2014. She was in privity with Mr. Su as she was assigned as the power of attorney. She particularly has no ownership interest in the vessel, but we do believe that Ms. Wong is liable for the conversion of the vessel. I mean, do you understand – I was just – the district court says the corker court is respectfully directed to enter judgment in favor of Ye and against Su and Wong. I don't see a clerk's judgment after that in the docket, and this opinion has indicated itself as a judgment, which is a little unusual, but typically you'd see with a clerk's judgment, it would indicate, for example, if it was joint and several liability, prejudgment interest, things like that. What is your understanding of the nature of the liability vis-a-vis Su and Wong? Well, we understand that while Ms. Wong was not an owner, she is not under any obligation – she's not deemed a co-owner, but that she did convert the vessel, and that any sort of division of the vessel – and as the court is aware, it was already sold, and now it's been reduced to a divisible asset – it would be a split of the proceeds, and that would be for Su and Wong, because Wong was the power of attorney for Su in the Sotheby's consignment. So you believe there is a judgment for half the value that runs against Wong that hasn't been effectively appealed? Is that your understanding? Yes, and that Mr. Clark and Su have not appealed any of the district court's decision as to Wong. It has only been focused on Su. But the order is to sell the vessel and divide the proceeds between the two 50 percent owners, right? Correct, and that was what's done. And if Su prevails here in saying, well, Ye didn't succeed in making a claim for conversion within the sexual limitation period, then maybe he gets 100 percent because he succeeded in converting it. That is correct. There doesn't seem to be a scenario in which Wang is getting anything, right? No, no. But just to give the court information that may or may not have been available, the vessel was sold in September 2024, and the division of assets equally would be 2.135 between Su and Ye, or what Su is asking for would be $4.27 million. It has been reduced to a divisible asset, and that is – the district court had mentioned that it was obvious that the co-owners could not amicably own the vessel. The district court thinks it should be 50-50, and you're saying your client should get more than 50 percent. Absolutely not. Our client is entitled to 50 percent of the proceeds of the vessel. Well, just to put a fine point on my question, if the statute of limitations ran – if we were to conclude it ran vis-à-vis Su, I understand all of your – you don't need to – I understand all of your arguments as to why that ought not to be correct, and the district court should be affirmed with respect to that. But if we disagreed with that, what is your understanding of whether you have a judgment vis-à-vis Wang that is of any value, or there's nothing to pursue there, or what? Well, there is, as Ms. Wang is the power of attorney to Su and represented to Sotheby's and assisted in consigning the item on behalf of Mr. Su. And so, therefore, it would be that the statute of limitations would be even better, because the district court held that Wang's conversion was 2014 of Mr. Ye's ownership of the vessel. So do you understand this to be essentially a joint and several, a liability? I understand that, Mr. Honor. Okay. But we don't have any indication from the district court as to whether that's the case, right? No, we do not. Okay. Thank you very much. Okay, thank you very much. Ms. Moe will turn back to Mr. Clark on rebuttal. Thank you, Your Honors. Just a couple kind of bullet points. Ms. Moe mentions totality of the circumstances have to be taken into account. No case site for that, no language I've ever seen that says that. Basically, the law is clear. Well, you agreed with me, actually, when I asked the question, like, well, what if he was banging on the front door and everybody was hiding inside and ignoring that? That would be not simple nondisclosure. That would be kind of active concealment. And so it does you can't simply say, well, they didn't respond, and, therefore, that's not active concealment. You do take into account the context. No, I'm not talking about that, Your Honor. I'm talking about the post-2010 events. You can't look at 2011 and say, oh, okay. No, no, I understand. I'm talking about 2007 to 2010, right? And you're saying, well, all they did was not respond to Ye's inquiries. And Ms. Moe points out, well, look, it was on consignment at the Chongyang Auction House. They had previously been made aware of Ye's ownership because Ye was there to sell it in 2005. The auction house was a party to the litigation in Shanghai. The normal way an auction house would behave is if somebody makes a claim of ownership, it would respond to that and confirm what the ownership is. And so the fact that Ye is making all of these inquiries to the auction house and the auction house is not responding is a departure from what it would normally do. And, therefore, it's not simple nonresponse. It's active concealment. Well, even if it's active concealment, that's not enough under New York law, and that's the judge's mistake. Well, why is it active concealment? I mean you have to make an effort to conceal as opposed to simply not responding. Well, even the hardest concealment in the world, the Farkas case that they rely on, is a family situation. It's a confidential relationship. There's no case that says a concealment is enough absent financial— Well, OK, it's a family situation, but, like, the mother-in-law doesn't have a fiduciary duty to the daughter-in-law, right? No, but she has a confidential. There's that confidence. In a family, you don't expect people to rip you off. In the commercial world, you do, and that's the whole difference I think you're on. Let me move on if I may. OK, but, you know, if it's that, if it's about a baseline—a departure from a baseline expectation, if Ye had had his previous dealings with the Chongyang auction house, why wouldn't that—why wouldn't it sudden, abrupt change to not recognize him as an owner or to respond to him be a departure from the baseline expectation? Well, this whole affirmative duty thing is not accepted in New York. I'm not saying there's a duty. I'm saying it's a departure from what they would normally do. Well, still, it doesn't create any kind of duty that gives rise to a tort. It gives rise to some kind of exception to what—a stop was supposed to be a very extraordinary remedy. If someone just basically is a potential defendant, is—waves a statute of limitations by refusing to respond to people making very intensive requests, then the statute becomes fairly meaningless. But let me move on a little bit. If the—we didn't get to on my part, but they raised was the 2014 auction, and that's outside the 2010 period, right? But clearly, at that point in time, they know—Ye knows Sue exists. He puts it in a letter to Sotheby's saying, I'm going to sue you and Sue. I'm going to sue Sotheby's and Sue. And he doesn't do it for four and a half years. Now, if that isn't—if that is not inquiry notice, I don't know what is. That's a road map. He doesn't have to know Sue's address at that point. And so— Does he not need to know the address at that point? Pardon me? Why doesn't he need to know the address at that point? Because he can— Even whether it's accurate that that's the name listed on the Sotheby's record. So, like your point, he can sue Zhang. He can sue Sotheby's. He knows Sotheby's has possession of it. He does nothing for four and a half years. There's no precedent that says that you have to have all the details necessary to sue somebody or waive the statute of limitations or lose the statute of limitations. There's no authority to that. And besides, Ye knows that the district—the Shanghai court has said, supposedly, that Zhang only has possession until the vessel is sold. Okay. There's no sale going on. Three years goes by. Where's Ye? Ye's not going to any court saying, where's my vessel? Where's my money? Nothing. But what about what Ms. Mo said, which is that Ye actually did go to the Shanghai court and tried to enforce its prior judgment? Well, he didn't sue. And if he sued, he wouldn't be here, right? I mean, the thing is, he didn't do anything to bring an action for conversion. And he didn't seek partition. And that's the only issue he had. So when we get to the proceeds, which is the last thing I want to say, is that the court has made up this theory, this damages theory. It's really damages. The court says he's not entitled to damages. But you get the proceeds. We're going to force a sale. Now, we agreed to the sale because the market conditions were right. That still doesn't mean there's any evidence in the record to support a 50-50 ownership interest. There's nothing at all. Because Ye put on no evidence about damages. And that's all that is. Well, the damages. But if, in fact, the district court were right that after the Shanghai judgment, each party had a 50 percent ownership interest in the vessel, then if it's sold, each would be entitled to 50 percent of the proceeds, right? No. Why? Not as a remedy for conversion. In other words, if he's deprived of— He's not saying about a remedy for conversion. He's saying based on a prior judgment of interest. No. But this isn't a remedy for conversion because we have the object, right? I mean, now we have the proceeds from the sale of the object. Right. But if they each own 50 percent of the object, why wouldn't each ownership get 50 percent of the proceeds? Because his right to enforce his interest in the vessel ended when the statute of limitations was passed. Right. I understand. So if he doesn't succeed in having a conversion claim, then he wouldn't be able to get it. Right. But if, in fact, he had a valid conversion claim and he could vindicate his 50 percent ownership interest, it would entitle him to 50 percent of the proceeds. I don't think so. I think the legal remedy is partition in that case, not conversion, because Su never converted. He was entitled to possession. Okay. Thank you very much, Mr. Clark. The case is submitted.